IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

| | | |
|---|---|---|
| Willie E. Gordon, Jr., | ) | Case No. 8:11-3399-MGL-JDA |
| | ) | |
| Petitioner, | ) | **REPORT AND RECOMMENDATION** |
| | ) | **OF MAGISTRATE JUDGE** |
| v. | ) | |
| | ) | |
| Warden Levern Cohen, | ) | |
| | ) | |
| Respondent. | ) | |
| _____ | ) | |

This matter is before the Court on Respondent's motion for summary judgment. [Doc. 24.] Petitioner, proceeding pro se, is a state prisoner who seeks relief pursuant to Title 28, United States Code, Section 2254. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B) and Local Rule 73.02(B)(2)(c), D.S.C., this magistrate judge is authorized to review post-trial petitions for relief and submit findings and recommendations to the District Court.

Petitioner, proceeding with the assistance of counsel, filed this Petition for writ of habeas corpus on December 14, 2011. [Doc. 1.] On May 11, 2012, Respondent filed a motion for summary judgment and a return and memorandum. [Docs. 24, 25.] On May 30, 2012, in the absence of a response to the motion, the Court issued an Order directing Petitioner to respond to the motion for summary judgment or the action would be subject to dismissal for failure to prosecute. [Doc. 28.] On June 11, 2012, Petitioner filed a response in opposition to the motion for summary judgment. [Doc. 30.]

Having carefully considered the parties' submissions and the record in this case, the Court recommends Respondent's motion for summary judgment be granted and the Petition be denied.

## BACKGROUND

Petitioner is incarcerated in the Ridgeland Correctional Institution of the South Carolina Department of Corrections. [Doc. 1 at 2.] In April 1997, Petitioner was indicted on seven counts of trafficking in crack cocaine in Indictment No. 97-GS46-1286. [Supp. App. 488–90[1].] Petitioner and a co-defendant proceeded to trial on May 5, 1997, where Petitioner was represented by Leland Greeley ("Greeley"). [Supp. App. 1–168.] On May 6, 1997, the Honorable Don S. Rushing declared a mistrial when a State's witness testified about an unrelated and uncharged drug transaction. [App. 157–63.]

Following the mistrial, Petitioner was indicted again on seven counts of trafficking in crack cocaine in Amended Indictment No. 97-GS46-1286. [Supp. App. 491–93; *see also* Doc. 25-1 (duplicate).] On June 9, 1997, Petitioner proceeded to trial on count five of the indictment, trafficking in crack cocaine on or about September 21 through September 23, 1996.[2] [Supp. App. 169–487.] Petitioner was again represented by Greeley. [Supp. App. 169.] On June 10, 1997, Petitioner was found guilty of trafficking in crack cocaine [Supp. App. 471–75], and on June 12, 1997, he was sentenced to thirty years imprisonment and a $50,000 fine [Supp. App. 482–86].

In October 2000, Petitioner was indicted for trafficking in crack cocaine on September 27, 1996 in Indictment No. 2000-GS-46-3180.[3] [App. 440–41.] On February

---

[1] The Supplemental Appendix can be found at Docket Entry Numbers 25-2 through 25-5 and the Appendix at Docket Entry Numbers 25-6 through 25-12.

[2] At the same time, Petitioner proceeded to trial on another indictment, No. 97-GS46-0414, for distribution of crack cocaine within proximity of a park or school on September 23, 1996. [Supp. App. 173.]

[3] The Supreme Court noted this indictment was "substantially the same as count seven of the 1997 indictment charging [Petitioner] with trafficking; however, at the 1997 trial, count seven was nol prossed with the right to restore." [App. 445 n.2.]

26, 2001, Petitioner proceeded to trial, where he was represented by public defenders Michael Hitchcock ("Hitchcock") and Lisa Collins ("Collins"). [App. 1–439.] On March 2, 2001, Petitioner was found guilty [App. 427–29] and sentenced to thirty years imprisonment to run concurrent with the 1997 sentence [App. 436–37; *see* App. 446].

**Direct Appeal**[4]

Petitioner appealed and, on February 28, 2002, Eleanor Duffy Cleary ("Cleary"), Assistant Appellate Defender with the South Carolina Office of Appellate Defense, filed a brief on Petitioner's behalf. [Doc. 25-13.] The brief raised one issue:

> Whether the trial court erred in refusing to grant appellant's motion to quash the indictment for drug trafficking on September 27, 1996, where appellant had previously been convicted of drug trafficking on September 23, 1996, and the evidence showed the two transactions were part of a continuing course of conduct that constituted one criminal act and prosecution on this indictment constituted double jeopardy in violation of the United States and South Carolina constitutions?

[Doc. 25-13 at 4.] Additionally, the State appealed the trial court's refusal to sentence Petitioner to life imprisonment without parole ("LWOP") under South Carolina's Two-Strikes law. [*See* App. 444.] The appeal was certified for review by the South Carolina Supreme Court pursuant to Rule 204(b) of the South Carolina Appellate Court Rules. [Doc. 25-14.] On October 20, 2003, the Supreme Court affirmed both appeals. [App. 442–50.] Rehearing was denied, and the remittitur was issued on November 20, 2003. [Docs. 25-15, 25-16.]

---

[4]Because the present Petition challenges only Petitioner's 2001 conviction [*see* Doc. 1 at 2], the Court includes information regarding only the direct appeal of the 2001 conviction.

**PCR Proceedings**

Petitioner, proceeding pro se, filed an application for post-conviction relief ("PCR") on December 12, 2003.[5] [App. 451–56.] In his PCR application, Petitioner challenged both the 1997 and 2001 convictions, alleging ineffective assistance of trial counsel; vindictive prosecution; collateral estoppel; judicial overreaching; prosecutorial misconduct; fatally defective indictment; lack of jurisdiction; lack of subjection matter jurisdiction; res judicata violation; and violation of due process rights. [App. 451–53.] Petitioner submitted the following as supporting facts:

(a) Counsel was ineffective for failing to honor applicant's request to make a motion to quash indictment on the ground of vindictive prosecution, judicial overreaching and collateral estoppel.

(b) Counsel was ineffective for failing to honor applicant's request to have Spencer Gordon called as a witness.

(c) Did the trial court lack[] subject matter jurisdiction where count five of the amended indictment #1286 failed to charge the Petitioner with the offenses allegedly proven and charged to the jury, and placed or printed on the verdict form by the trial court as a lesser included offense, over trial counsel's objection?

(d) Solicitor Brackett failed to comply to the order passed down by the Honorable Rushings, on May 5, 1997, concerning the case.

(e) By Solicitor Brackett not complying to Ru[s]hing's order concerning requirements for this indictment to go forward.

---

[5]Petitioner had previously filed a PCR application challenging his 1997 conviction on March 22, 1999. [*See* App. 496.] That PCR application was denied and dismissed on November 20, 2001. [*See id.*] Petitioner's petition for writ of certiorari was denied on February 21, 2003. [*See id.*]

> (f) There is a standing order of the court, by Judge Rushing, which is law of the case. That standing order has not been complied with.

[App. 453.]

The State filed a return, dated January 5, 2005, asserting the claims related to the 1997 conviction were successive and untimely and requesting an evidentiary hearing on the claims related to the 2001 conviction. [App. 495–502.] Thereafter, Petitioner's PCR counsel at the time, G. Franklin Pendleton, filed a motion to sever [*see* App. 478] and two supplemental PCR applications—one challenging the 1997 conviction [App. 457–77] and the other challenging the 2001 conviction [App. 478–94]. With respect to the 2001 conviction, Petitioner asserted the following issues:[6]

> (1) Trial counsel was ineffective when he failed to present evidence of "Prosecutorial Vindictiveness" and move for dismissal of indictment.

> (2) State failed to disclose favorable evidence in violation of Brady v. Maryland in re to impeachment material of State's key witness, Tommy James Rhinehart.

> (3) Trial counsel was ineffective when he "opened the door" to evidence of prior uncharged criminal conduct relating to allegations of September 26, 1996 of alleged incident of trafficking crack cocaine.

> (4) Trial counsel was ineffective when he introduced evidence of 2.2 grams of crack cocaine that Rhinehart alleged he received from the Applicant on September 26, 1996 resulting, inter alia, the Applicant losing his right to closing argument, and offering evidence that essentially supported the testimony of Tommy Rhinehart, and showed a hand to hand drug transaction between Applicant and Rhinehart that was not charged.

---

[6]Because the current Petition challenges only Petitioner's 2001 conviction [*see* Doc. 1 at 2], the Court includes only the PCR claims related to Petitioner's 2001 conviction.

(5)  Trial counsel was ineffective when he failed to object to the indictment setting forth "every means and method" of violating the trafficking statute in that the charging instrument was overbroad and did not put the Applicant on notice of the criminal conduct he was alleged to have committed, but rather alleged at least (8) separate ways to commit the offense.

(6)  Trial counsel failed to object the trial court['s] Allen instruction was a[n] incorrect statement of the law as it did not inform the jurors in the minority that they need not surrender their conscientiously held opinions to the majority of jurors.

(7)  Trial counsel was ineffective when he failed to present evidence of manipulation of the Grand Jury process resulting in prosecutorial misconduct and a due process violation and double jeopardy violation and collateral estoppel and Trial counsel was ineffective when he failed to move for dismissal of the indictment based on collateral estoppel and judicial overreaching.

[App. 479–80.]  The State filed an amended return, dated March 28, 2007.  [App. 506–07.]

On October 22–23, 2007, an evidentiary hearing was held concerning Petitioner's PCR application, at which Petitioner was represented by Tommy A. Thomas ("Thomas") and Tricia Blanchette ("Blanchette").  [App. 508–688.]  On April 16, 2008, the PCR court issued an order of dismissal, denying the motion to sever, addressing the allegations relating to both convictions, and denying and dismissing Petitioner's PCR application with prejudice.  [App. 689–704.]  With respect to the 1997 conviction, the PCR court found the PCR application was successive and untimely.  [App. 694–96.]  The PCR court identified the following as Petitioner's grounds for relief with respect to the 2001 conviction:

1.  Ineffective Assistance of Counsel.
    a)  Trial counsel was ineffective for his failure to introduce evidence of prosecutorial vindictiveness,
        i.  Direct nexus between success with the forfeiture and indictment 3180, indictment was 37 days later,

iii.    If trial counsel would have shown a presumption of vindictiveness, the burden would have shifted to the State.

b)    Failure to call Robert Barnhill and Pete Skidmore (investigators),

c)    Failure to move to quash the indictment because it didn't allege an overt act in regards to Judge Rushing's order for the State to put the defense on notice of at least one substantive act,

d)    Failure to use *nolle prossed* and no billed indictments to impeach sole witness, Tommy James Rhinehart,

e)    Introduced drugs from prior uncharged criminal conduct on September 26, no other evidence or testimony was put up by the defense, this shows propensity to commit type of offense, the state would not have been able to admit the drugs b/c it shows propensity and it is bad act evidence,

f)    Failure to object to the <u>Allen</u> charge given to the jury,

g)    Failure to properly address the double jeopardy issue when the Solicitor stated that -1286 became -3180.

[App. 692–93.]  In a detailed discussion of Petitioner's allegations concerning the 2001 conviction, the applicable law, and the court's conclusions, the PCR court found Petitioner had failed to prove that trial counsel failed to render reasonably effective assistance and that Petitioner was prejudiced by trial counsel's performance.  [App. 696–703.]

Petitioner filed a timely notice of appeal [Doc. 25-17] and an explanation pursuant to Rule 227(c) of the South Carolina Appellate Court Rules, arguing the lower court erred in its finding that Petitioner's PCR application was successive and untimely with respect to the 1997 conviction [Doc. 25-18].  On July 10, 2008, the South Carolina Supreme Court

issued an order of dismissal, explaining Petitioner "failed to show that there [was] an arguable basis for asserting that the determination by the lower court was improper." [Doc. 25-19.] Petitioner filed a motion for reconsideration [Doc. 25-20], and on July 25, 2008, the Supreme Court issued an order reinstating the matter as to the claims related to the 2001 conviction [Doc. 25-21]. Accordingly, the Supreme Court explained, Petitioner could seek certiorari from the PCR court's denial of his claims related to the 2001 conviction. [*Id.*] Subsequently, Petitioner filed a petition for writ of certiorari in the Supreme Court, dated June 8, 2009. [Doc. 25-22.] The petition asserted the following issue:

> Did the PCR judge err in refusing to find counsel ineffective for failing to object based on prosecutorial vindictiveness when the State proceeded with a second trial only after petitioner prevailed in a related civil forfeiture case?

[*Id.* at 3.] On December 2, 2010, the Supreme Court denied the petition. [Doc. 25-24.] Remittitur was issued on December 21, 2010. [Doc. 25-25.]

**Habeas Petition**

Petitioner filed this Petition for writ of habeas corpus on December 14, 2011 pursuant to 28 U.S.C. § 2254. [Doc. 1.] Petitioner raises the following grounds for relief, quoted substantially verbatim:

> 1. The PCR Judge erred in refusing to find counsel ineffective for failing to object based on prosecutorial vindictiveness when the State proceeded with a second trial only after the Petitioner prevailed in a related civil forfeiture case.
>
> 2. The State failed to disclose favorable evidence in violation of Brady v. Maryland, to impeachment material of the State's key witness, and the Petitioner asserts his actual innocence and prosecutorial misconduct.

3.      The trial counsel was ineffective when he opened the door to evidence of prior uncharged criminal conduct relative to allegation of September 26, 1996 of alleged incident of trafficking crack-cocaine.

4.      The trial counsel was ineffective when he introduced evidence of 2.2 grams of crack-cocaine that Rhinehart alleged came from the Petitioner on September 26, 1996, resulting in the Petitioner losing his right to closing argument, and offering evidence that essentially supported the testimony of Rhinehart and showed a hand-to-hand drug transaction between the Petitioner and Rhinehart that was not charged.

5.      The trial counsel was ineffective when he failed to object to the indictment setting for "every means and method" violating the trafficking stature in that the charging instrument was overbroad and did not put the Petitioner on notice of the criminal conduct he was alleged to have committed, but rather alleged at least eight separate ways to commit the offense.

6.      The trial counsel was ineffective when he failed to object to the Allen charge given to the deadlocked jury and not mentioned that the minority of jurors should reconsider their views in light of the majority and that the majority should reconsider their views in light of the minority of jurors; the Allen charge was coercive to jurors in the minority.

7.      The trial counsel was ineffective when he failed to move for dismissal of the indictment based on collateral estoppel, judicial overreaching and double jeopardy grounds.

8.      The re-indictment of Indictment 1997-GS-46-1286 did not fix the constitutional notice issue that resulted in Judge Rushing's order quashing the indictment.

9.      Jeopardy was attached to the Indictment 97-GS-46-266 during the mistrial, so the State should not have been allowed to go back to the Grand Jury.

[Doc. 1-1 at 4–5.]  As previously stated, on May 11, 2012, Respondent filed a motion for summary judgment.  [Doc. 24.]  On June 11, 2012, Petitioner filed a response in opposition.  [Doc. 30.]  Accordingly, Respondent's motion is ripe for review.

## APPLICABLE LAW

**Summary Judgment Standard**

Rule 56 of the Federal Rules of Civil Procedure states, as to a party who has moved for summary judgment:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(a).  A fact is "material" if proof of its existence or non-existence would affect disposition of the case under applicable law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant.  *Id.* at 257.  When determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party.  *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the court that there is no genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings.  *Id.* at 324.  Rather, the non-moving party must demonstrate specific, material facts exist that give rise to a genuine issue.  *Id.*  Under this

standard, the existence of a mere scintilla of evidence in support of the non-movant's position is insufficient to withstand the summary judgment motion. *Anderson,* 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude granting the summary judgment motion. *Ross v. Commc'ns Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985), *overruled on other grounds*, 490 U.S. 228 (1989). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248. Further, Rule 56 provides in pertinent part:

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> > (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
> >
> > (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). Accordingly, when Rule 56(c) has shifted the burden of proof to the non-movant, he must produce existence of a factual dispute on every element essential to his action that he bears the burden of adducing at a trial on the merits.

**Habeas Corpus**

### *Generally*

Because Petitioner filed his petition after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), review of his claims is governed by 28 U.S.C. § 2254(d), as amended. *Lindh v. Murphy*, 521 U.S. 320 (1997); *Breard v. Pruett,* 134 F.3d 615 (4th Cir. 1998). Under the AEDPA, federal courts may not grant habeas corpus relief unless the underlying state adjudication

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Williams v. Taylor*, 529 U.S. 362, 410 (2000). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision," and "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Harrington v. Richter*, 131 S.Ct. 770, 786 (2011). Moreover, state court factual determinations are presumed to be correct, and the petitioner has the burden of rebutting this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

***Procedural Bar***

Federal law establishes this Court's jurisdiction over habeas corpus petitions. 28 U.S.C. § 2254. This statute permits relief when a person "is in custody in violation of the Constitution or laws or treaties of the United States" and requires that a petitioner present his claim to the state's highest court with authority to decide the issue before the federal court will consider the claim. *Id.* The separate but related theories of exhaustion and procedural bypass operate to require a habeas petitioner to first submit his claims for relief to the state courts. A habeas corpus petition filed in this Court before the petitioner has appropriately exhausted available state-court remedies or has otherwise bypassed seeking relief in the state courts will be dismissed absent unusual circumstances detailed below.

*Exhaustion*

Section 2254 contains the requirement of exhausting state-court remedies and provides as follows:

> (b)   (1) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that—
>
> > (A) the applicant has exhausted the remedies available in the courts of the State; or
> >
> > (B)   (i) there is an absence of available State corrective process; or
> >
> > (ii) circumstances exist that render such process ineffective to protect the rights of the applicant.
>
> (2) An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.

> (3) A State shall not be deemed to have waived the exhaustion requirement or be estopped from reliance upon the requirement unless the State, through counsel, expressly waives the requirement.
>
> (c) An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

28 U.S.C. § 2254. The statute requires that, before seeking habeas corpus relief, the petitioner first must exhaust his state court remedies. *Id.* § 2254(b)(1)(A). "To satisfy the exhaustion requirement, a habeas petitioner must present his claims to the state's highest court." *Matthews v. Evatt*, 105 F.3d 907, 911 (4th Cir. 1997). Thus, a federal court may consider only those issues that have been properly presented to the highest state court with jurisdiction to decide them.

In South Carolina, a person in custody has two primary means of attacking the validity of his conviction: (1) through a direct appeal, or (2) by filing an application for PCR. State law requires that all grounds for relief be stated in the direct appeal or PCR application. S.C. App. Ct. R. 203; S.C. Code Ann. § 17-27-90; *Blakeley v. Rabon*, 221 S.E.2d 767, 770 (S.C. 1976). If the PCR court fails to address a claim as required by S.C. Code Ann. § 17-27-80, counsel for the applicant must make a motion to alter or amend the judgment. S.C. R. Civ. P. 59(e). Failure to do so will result in the application of a procedural bar to that claim by the South Carolina Supreme Court. *Marlar v. State*, 653 S.E.2d 266 (S.C. 2007).[7] Further, strict time deadlines govern direct appeal and the filing

---

[7] In *Bostick v. Stevenson*, 589 F.3d 160 (4th Cir. 2009), the Fourth Circuit found that, prior to the Supreme Court of South Carolina's November 5, 2007 decision in *Marlar*, South Carolina courts had not uniformly and strictly enforced the failure to file a motion pursuant to Rule 59(e) as a procedural bar. 589 F.3d

of a PCR application in the South Carolina courts. For direct appeal, a notice of appeal must be filed and served on all respondents within ten days after the sentence is imposed or after receiving written notice of entry of the order or judgment. S.C. App. Ct. R. 203(b)(2), (d)(1)(B). A PCR application must be filed within one year of judgment, or if there is an appeal, within one year of the appellate court decision. S.C. Code Ann. § 17-27-45(A).

If any avenue of state relief is still available, the petitioner must proceed through the state courts before requesting a writ of habeas corpus in the federal courts. *Richardson v. Turner*, 716 F.2d 1059, 1062 (4th Cir. 1983); *Patterson v. Leeke*, 556 F.2d 1168, 1173 (4th Cir. 1977). Therefore, in a federal petition for habeas relief, a petitioner may present only those issues that were presented to the highest South Carolina court through direct appeal or through an appeal from the denial of a PCR application, regardless of whether the court actually reached the merits of the claim. *See State v. McKennedy*, 559 S.E.2d 850, 854 (S.C. 2002) ("[South Carolina] has identified the petition for discretionary review to [the South Carolina Supreme Court] in criminal and post-conviction cases as *outside* South Carolina's standard review process. In [the South Carolina Supreme Court's] 1990 order, th[e] Court stated that petitions for rehearing and certiorari following an adverse Court of Appeals' decision are not required in order to exhaust all available state remedies." (emphasis in original) (citing *In re Exhaustion of State Remedies in Criminal and Post-Conviction Relief Cases*, 471 S.E.2d 454 (S.C. 1990)).

---

at 162–65. Accordingly, for matters in which there was a PCR ruling prior to November 5, 2007, the Court will not consider any failure to raise issues pursuant to Rule 59(e) to effect a procedural bar.

*Procedural Bypass*

Procedural bypass, sometimes referred to as procedural bar or procedural default, is the doctrine applied when a petitioner seeks habeas corpus relief based on an issue he failed to raise at the appropriate time in state court, removing any further means of bringing that issue before the state courts.  In such a situation, the petitioner has bypassed his state remedies and, as such, is procedurally barred from raising the issue in his federal habeas petition.  *See Smith v. Murray*, 477 U.S. 527, 533 (1986).  The United States Supreme Court has stated that the procedural bypass of a constitutional claim in earlier state proceedings forecloses consideration by the federal courts.  *See id.*  Bypass can occur at any level of the state proceedings if a state has procedural rules that bar its courts from considering claims not raised in a timely fashion.  *Id.*

The Supreme Court of South Carolina will refuse to consider claims raised in a second appeal that could have been raised at an earlier time.  *See* S.C. Code Ann. § 17-27-90; *Aice v. State*, 409 S.E.2d 392, 394 (S.C. 1991).  Further, if a prisoner has failed to file a direct appeal or a PCR application and the deadlines for filing have passed, he is barred from proceeding in state court.  S.C. App. Ct. R. 203(d)(3), 243.  If the state courts have applied a procedural bar to a claim because of an earlier default in the state courts, the federal court honors that bar.  *See Reed v. Ross*, 468 U.S. 1, 11 (1984); *see also Kornahrens v. Evatt*, 66 F.3d 1350, 1357 (4th Cir. 1995).  As the United States Supreme Court explained:

> . . . [State procedural rules promote] not only the accuracy and efficiency of judicial decisions, but also the finality of those decisions, by forcing the defendant to litigate all of his claims together, as quickly after trial as the docket will allow, and

> while the attention of the appellate court is focused on his
> case.

*Reed*, 468 U.S. at 10–11.

However, if a federal habeas petitioner can show both (1) "'cause' for noncompliance with the state rule" and (2) "'actual prejudice resulting from the alleged constitutional violation[,]'" the federal court may consider the claim. *Smith*, 477 U.S. at 533 (quoting *Wainwright v. Sykes*, 433 U.S. 72, 84 (1977)). When a petitioner has failed to comply with state procedural requirements and cannot make the required showing of cause and prejudice, the federal courts generally decline to hear the claim. *Murray v. Carrier*, 477 U.S. 478, 496 (1986). Further, if the petitioner does not raise cause and prejudice, the court need not consider the defaulted claim. *See Kornahrens*, 66 F.3d at 1363.

If a federal habeas petitioner has failed to raise a claim in state court and is precluded by state rules from returning to state court to raise the issue, he has procedurally bypassed his opportunity for relief in the state courts and in federal court. *Coleman v. Thompson*, 501 U.S. 722, 731–32 (1991). Absent a showing of cause and actual prejudice, a federal court is barred from considering the claim. *Wainwright*, 433 U.S. at 87. In such an instance, the exhaustion requirement is technically met, and the rules of procedural bar apply. *Teague v. Lane*, 489 U.S. 288, 297–98 (1989); *Matthews*, 105 F.3d at 915 (citing *Coleman*, 501 U.S. at 735 n.1; *Teague*, 489 U.S. at 297–98; *George v. Angelone*, 100 F.3d 353, 363 (4th Cir. 1996); *Bassette v. Thompson*, 915 F.2d 932, 937 (4th Cir. 1990)).

*Cause and Actual Prejudice*

Because the requirement of exhaustion is not jurisdictional, this Court may consider claims that have not been presented to the South Carolina Supreme Court in limited circumstances—where a petitioner shows sufficient cause for failure to raise the claim and actual prejudice resulting from the failure, *Coleman*, 501 U.S. at 750, or where a "fundamental miscarriage of justice" has occurred, *Murray*, 477 U.S. at 495–96. A petitioner may prove cause if he can demonstrate ineffective assistance of counsel relating to the default, show an external factor hindered compliance with the state procedural rule, or demonstrate the novelty of a particular claim, where the novelty of the constitutional claim is such that its legal basis is not reasonably available to the petitioner's counsel. *Id.* at 487–89; *Reed*, 468 U.S. at 16. Absent a showing of "cause," the court is not required to consider "actual prejudice." *Turner v. Jabe*, 58 F.3d 924, 931 (4th Cir. 1995). However, if a petitioner demonstrates sufficient cause, he must also show actual prejudice to excuse a default. *Murray*, 477 U.S. at 492. To show actual prejudice, the petitioner must demonstrate more than plain error. *Engle v. Isaac*, 456 U.S. 107, 134–35 (1982).

As an alternative to demonstrating cause for failure to raise the claim, the petitioner must show a miscarriage of justice. To demonstrate a miscarriage of justice, the petitioner must show he is actually innocent. *See Murray*, 477 U.S. at 496 (holding a fundamental miscarriage of justice occurs only in extraordinary cases, "where a constitutional violation has probably resulted in the conviction of someone who is actually innocent"). Actual innocence is defined as factual innocence, not legal innocence. *Bousley v. United States*,

523 U.S. 614, 623 (1998). To pass through this actual innocence standard, the petitioner's case must be truly extraordinary. *Murray*, 477 U.S. at 496.

## DISCUSSION

In his response in opposition to the motion for summary judgment, Petitioner withdrew Grounds 2 through 9 and argued the merits of only Ground 1 of the Petition, apparently conceding Grounds 2 through 9 are procedurally barred. [Doc. 30.] Accordingly, the Court addresses only Ground 1—"[t]he PCR Judge erred in refusing to find counsel ineffective for failing to object based on prosecutorial vindictiveness when the State proceeded with a second trial only after the Petitioner prevailed in a related civil forfeiture case."

Under the AEDPA, a federal court may not grant habeas relief unless the underlying state court decision was contrary to or an unreasonable application of federal law, as determined by the United States Supreme Court, 28 U.S.C. § 2254(d)(1), or based on an unreasonable determination of the facts before the court, *id.* § 2254(d)(2). The Supreme Court has held the "contrary to" and "unreasonable application of" clauses present two different avenues for relief. *Williams*, 529 U.S. at 405 ("The Court of Appeals for the Fourth Circuit properly accorded both the 'contrary to' and 'unreasonable application' clauses independent meaning."). The Court stated there are two instances when a state court decision will be contrary to Supreme Court precedent:

> A state-court decision will certainly be contrary to our clearly established precedent if the state court applies a rule that contradicts the governing law set forth in our cases. . . . A state-court decision will also be contrary to this Court's clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of this

> Court and nevertheless arrives at a result different from our
> precedent.

*Id.* at 405–06.  On the other hand, a state court decision is an unreasonable application of Supreme Court precedent when the decision "correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case." *Id.* at 407–08; *see also Richter*, 131 S. Ct. at 786 ("Under § 2254(d), a habeas court must determine what arguments or theories supported or, as here, could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of this Court. . . . It bears repeating that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable.").  Finally, a decision cannot be contrary to or an unreasonable application of Supreme Court precedent unless applicable Supreme Court precedent exists; without applicable Supreme Court precedent, there is no habeas relief for petitioners.  *Virsnieks v. Smith*, 521 F.3d 707, 716 (7th Cir. 2008) (citing *Lockhart v. Chandler*, 446 F.3d 721, 724 (7th Cir. 2006); *Simpson v. Battaglia*, 458 F.3d 585, 597 (7th Cir. 2006)); *see Bustos v. White*, 521 F.3d 321, 325 (4th Cir. 2008).

When evaluating a habeas petition based on a claim of ineffective assistance of counsel, assuming the state court applied the correct legal standard—the Supreme Court's holdings in *Strickland v. Washington*, 466 U.S. 668 (1984)—"[t]he pivotal question is whether the state court's application of the *Strickland* standard was unreasonable.  This is different from asking whether defense counsel's performance fell below *Strickland*'s

standard."[8]  *Richter*, 131 S. Ct. at  785.  "A state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself."  *Id.*; *see also Yarborough v. Gentry*, 540 U.S. 1, 6 (2003) (stating judicial review of counsel's performance is "doubly deferential when it is conducted through the lens of federal habeas").  Even if a state court decision questionably constitutes an unreasonable application of federal law, the "state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision."  *Richter*, 131 S. Ct. at 786 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).  Thus, in such situations, the habeas court must determine whether it is possible for fairminded jurists to disagree that the arguments or theories supporting the state court's decision are inconsistent with Supreme Court precedent.  *Id.*

Here, the PCR court evaluated Petitioner's counsel's performance under the standard set forth in *Strickland*.  [App. 696–703.]  The PCR court made the following findings as to the specific claim Petitioner raises to this Court:

> [Petitioner] alleges that trial counsel should have put forth evidence of the prosecution alleg[edly] wiring the confidential informant and sending him to [Petitioner's] previous attorney's office.  [Petitioner] also contends that he was indicted for this matter after he was successful in his

---

[8] In *Strickland*, the Supreme Court established that to challenge a conviction based on ineffective assistance of counsel, a prisoner must prove two elements: (1) his counsel was deficient in his representation and (2) he was prejudiced as a result.  466 U.S. at 687.  To satisfy the first prong, a prisoner must show that "counsel's representation fell below an objective standard of reasonableness."  *Id.* at 688.  To satisfy the second prong, a prisoner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Id.* at 692.  The Supreme Court has cautioned that "[j]udicial scrutiny of counsel's performance must be highly deferential," and "[b]ecause of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."  *Id.* at 689.

forfeiture case, and that had trial counsel shown evidence of this, the burden would have shifted to the State.

However, Mr. Greeley, the attorney who represented [Petitioner] on other charges testified that he didn't know about a wire and that he had heard rumors about it. Mr. Hitchcock noted that he talked to [Petitioner] about vindictiveness by the police department but felt alleging vindictiveness never works out well because it is difficult to establish. He also said that the police officers wouldn't testify that they've been vindictive without a whistle blower, and if you do allege it and it backfires, you lose your credibility. He stated that he was aware of something to do with wires but was not aware if any wires were used in his office and noted that he thought it would be "a stretch" to allege misconduct.

[Petitioner] presented no evidence of vindictiveness other than Mr. Greeley's testimony that there were rumors of witnesses being wired. He did not present any evidence that the Prosecutor indicted him because he won his forfeiture claim. Further, trial counsel stated a valid reason as to why pursuing a claim of this nature would [] not be meritorious. The State always had the burden to show that [Petitioner] committed the crime charged beyond a reasonable doubt. It was up to the jurors to decide if the State had done so, which they ultimately did and found [Petitioner] guilty. This allegation is denied.

[App. 697–98.] The PCR court also found Petitioner's testimony was not credible, but his trial counsel's testimony was credible, and that trial counsel adequately conferred with Petitioner, conducted a proper investigation, and were thoroughly competent in their representation. [App. 703.] The PCR court concluded Petitioner's trial counsel's conduct did not fall below the objective standard of reasonableness, and Petitioner had failed to prove either prong of the *Strickland* test. [*Id.*]

Upon review, the Court determines the PCR court's denial of Petitioner's ineffective assistance claim was neither contrary to nor an unreasonable application of applicable Supreme Court precedent. First, the PCR court applied the *Strickland* standard, which is the applicable Supreme Court precedent. Second, the record fails to demonstrate the PCR

court confronted a set of facts that were materially indistinguishable from those considered in a decision of the Supreme Court but arrived at a result different from the Supreme Court precedent. Thus, the Court concludes the PCR court's decision was not contrary to applicable Supreme Court precedent.

Further, the record supports the PCR court's decision, which demonstrates the PCR court's decision was not an unreasonable application of *Strickland*. For example, the record indicates Hitchcock, Petitioner's counsel for his 2001 trial, was aware of the forfeiture proceeding and actually attended some of the proceedings. [App. 602.] Hitchcock also testified at the PCR hearing that it appeared that the solicitor's office was "after the money" and going after the money could be perceived as vindictive. [App. 613–15.] Hitchcock testified he addressed his concerns with the charges against Petitioner by filing a double jeopardy motion. [*See, e.g.*, App. 601, 604–08, 615–16.] Further, Collins, who also represented Petitioner during the 2001 trial, testified at the PCR hearing that Hitchcock extensively argued the double jeopardy motion, and the trial court's ultimate ruling as to Petitioner's sentence—running Petitioner's second sentence concurrent with the first because the charges giving rise to both sentences stemmed from the same course of conduct—effectively had the same result the defense sought through the double jeopardy motion. [App. 680–81.] Finally, Hitchcock testified he considered whether there was any vindictiveness of the part of the police and made a strategic decision not to pursue that issue. [App. 611–12.] Thus, nothing in the record before the Court indicates the PCR court unreasonably concluded Petitioner had failed to establish either prong of the *Strickland* test. Therefore, the Court finds the PCR court's decision was not contrary to or

an unreasonable application of applicable Supreme Court precedent, and Petitioner is not entitled to habeas corpus relief.

## CONCLUSION AND RECOMMENDATION

Wherefore, based upon the foregoing, the Court recommends that Respondent's motion for summary judgment be GRANTED and the Petition be DENIED.

IT IS SO RECOMMENDED.

s/Jacquelyn D. Austin
United States Magistrate Judge

September 19, 2012
Greenville, South Carolina